IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**DALTON SKINNER, individually and on
behalf of all others similarly situated**                    **PLAINTIFF**

V.                    CASE NO. SA 5-22-CV-00799-JKP

**HUNT MH SHARED SERVICES, LLC AND
HUNT MILITARY COMMUNITIES MGMT., INC.**            **DEFENDANTS**

## BRIEF IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AND APPOINTMENT OF CLASS COUNSEL AND FOR AN ORDER SCHEDULING FAIRNESS HEARING AND DIRECTING NOTICE TO CLASS

Plaintiff and Defendant submit this Brief in support of their Joint Motion for Preliminary Approval of their Settlement, Class Certification, and Appointment of Class Counsel and for an Order Scheduling a Fairness Hearing and Directing Notice. The Parties' Motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks an order:

(a)    Granting preliminary approval of the Parties' settlement;

(b)    Certifying the class under Rule 23(b)(3);

(c)    Appointing Plaintiff's counsel as Class Counsel under Rule 23(g);

(d)    Scheduling a hearing on the fairness of the proposed settlement and setting a due date for objections; and

(e)    Approving the proposed notice to class members and directing Class Counsel to mail the approved notice to class members within 14 days after Court's order approving notice, or as soon as administratively practicable thereafter.

**A.  Relevant Procedural and Factual History**

On August 24, 2021, the Named Plaintiff Dalton Skinner ("Skinner," the "Named Plaintiff," or "Plaintiff") filed this action entitled *Skinner, et al. v. Hunt Military Communities Management, LLC*, Case No. 4:21-CV-746-LPR, in the United States District Court for the Eastern District of Arkansas (the "Action"). [Doc. 1]  In the Action, the Named Plaintiff alleges that Hunt MH Shared Services, LLC and Hunt Military Communities Management, LLC. ("Defendants" or "Hunt") violated the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA") by failing to pay him lawful overtime wages for all hours worked.  Plaintiff alleged that Hunt violated applicable state and federal law by failing to properly pay its hourly non-exempt employees nationwide for all hours worked.  Specifically, Plaintiff alleged that Defendants' treatment of on-call/standby hours was improper under the law, resulting in a failure to accurately pay for all hours worked.  Plaintiff sought to recover declaratory relief, damages for all unpaid overtime compensation, liquidated damages for such unpaid wages, pre-judgment interest, attorneys' fees and costs, and such other relief as the applicable court deemed proper.

During the course of the Action, the Parties engaged in fact investigation and informal discovery, providing information related to the claims and defenses as well as to potential damages and performed calculations of potential damages.  After agreeing to focus their efforts on early settlement negotiations, the Parties engaged in arm's length negotiations and were able to reach an agreement to mediate, on October 14, 2021, the case was stayed to enable to parties to pursue mediation.  [Doc No. 5]

In mediation on April 11, 2022, the parties in this case completed a mediation with nationally-renowned Texas employment law mediator Bill Lemons, and apprised the Court that Plaintiff and Defendants reached a settlement in principle that will resolve all claims asserted by Plaintiff and the proposed class and collective. There was an agreement in mediation to transfer the case, and it is now pending in the Western District of Texas, as Case No. 5-22-CV-00799-JKP-RBF.

Based upon the investigation of proposed Class Counsel, the informal discovery that occurred, the size of the potential class, and taking into account the contested factual and legal issues involved, the expense and time necessary to prosecute the Action through formal discovery, class-certification proceedings, and trial as well as the risks and costs of further prosecution of the Action, the uncertainties of complex litigation, and the benefits to be received pursuant to this Agreement, Skinner and Class Counsel have concluded that a settlement with Hunt on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Skinner and the putative class. As such, he and Class Counsel have agreed to settle this Action with Hunt on the terms set forth in the Parties' Settlement Agreement.

Despite entering into the Settlement Agreement, Hunt denies the claims asserted and makes no admission whatsoever of liability under or violation of the FLSA, the AMWA and similar state wage laws, or other applicable law. Also, although Hunt consents to class certification, it does so solely for Settlement purposes and does not waive its right later, should Settlement not be approved, to assert that certification is not proper under Rule 23 or Section 216(b) of the FLSA. Hunt nevertheless desires to settle the Action on the terms set forth in the Settlement Agreement

for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by the Action.

The Parties have agreed to resolve this matter on a Rule 23 classwide basis. Given the overlap between claims arising under the FLSA and the AMWA and other state law claims, and the fact that the Rule 23 standard is arguably more demanding than the standard for certification of an opt-in collective under the FLSA, which is whether the members of the collective are "similarly situated," the FLSA and AMWA and other state law claims are both being resolved together through this Settlement. As such, the Settlement includes all current or former hourly-paid employees who worked unrestricted non-working standby time at all Hunt managed locations in the United States at any time between August 24, 2018 and January 13, 2023 (the "Class Period,") who did or could have asserted claims in the Action under the FLSA or the AMWA or other state law claims and who have not otherwise released such claims.

The Parties believe that the settlement reached in this matter represents a fair and reasonable compromise given the disputed matters at issue and the risks of continuing forward with litigation on the merits and on certification.

**B.    Terms of the Proposed Settlement**

The Parties have reached a Settlement and entered into a Settlement Agreement to resolve this lawsuit. The Settlement Agreement is attached as Exhibit A. They now present their settlement for approval by the Court under Rule 23(e). They and their counsel have undertaken an investigation as to the facts and the claims and defenses in the lawsuit and the disputed issues regarding standby or on-call hours at issue. They have also considered the various risks and delays involved in this contested litigation. The proposed Settlement provides for payments to

Settlement Class Members who do not opt out of the Settlement in exchange for a release and waiver of specified claims.  The Parties believe the proposed Settlement is a reasonable and fair resolution of their differences.

The Parties stipulate to a Rule 23(b)(3) Settlement Class consisting of those persons who meet the following class definition:  All current or former hourly- paid employees who worked unrestricted non-working standby or on-call time at all Hunt managed locations in the United States at any time between August 24, 2018 and January 13, 2023 (the "Class Period,") who did or could have asserted claims in the Action under the FLSA or the AMWA and who have not otherwise released such claims.  The Parties' Settlement Agreement contemplates payment of a total Skinner settlement amount in a common fund ("Settlement Amount"), which includes attorneys' fees and costs as well as costs of administering the Settlement.  The Settlement Amount was calculated based on the Parties' agreement, for settlement purposes, that first taking the pay periods for all Participating Class Members during the Class Period with the amount of hours worked and standby pay, the Settlement Administrator shall then divide the Net Settlement Amount by the total number of pay periods to determine a dollar amount per pay period ("Pay Period Rate"); and the Settlement Administrator shall then take the number of pay periods for each Participating Class Member and multiply it by the Pay Period Rate to calculate their Settlement Share.

In exchange for the settlement payments under the Settlement Agreement, Skinner has agreed to dismiss the Action and all claims with prejudice.  Further, in exchange for their respective settlement payments, Skinner and each and every Settlement Class Member, knowingly and voluntarily waives and releases Hunt and the Released Parties (as defined in the Settlement

Agreement) from all known and unknown claims for overtime compensation, minimum wages, liquidated damages, penalties and interest, attorney's fees and costs under the FLSA, the AMWA, or any other applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) arising from each individual's employment with Defendant up to January 13, 2023.

## ARGUMENT AND AUTHORITIES

### A.     The Settlement Procedure for Class Actions

The Fifth Circuit holds that there is an "overriding public interest in favor of settlement" that it has recognized "[p]articularly in class action suits." *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir.1981) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977)); *see also Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir.2004) (acknowledging the "strong judicial policy favoring the resolution of disputes through settlement" and affirming both class certification and settlement approval (internal citation and quotation marks omitted))

Further, "the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (internal citations omitted); *accord Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them…. As a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming.").

Where, as here, the Parties propose to resolve class litigation through a classwide settlement, they must obtain the Court's approval. Fed. R. Civ. P. 23(e). Under Rule 23(e)(2), a

court must hold a hearing to consider whether a proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285 (5th Cir. 2017)

To determine whether proposed class-action settlements are fair, adequate, and reasonable, as amended in 2018, Rule 23(e) now provides a list of factors that district courts must consider when evaluating whether a proposed settlement is "fair, reasonable, and adequate":

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate taking into account:

   i    the costs, risks, and delay of trial and appeal;

   ii   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii  the terms of any proposed award of attorney's fees, including timing of payment; and

   iv   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

*Fed. R. Civ. P. 23(e)(2).*

Before Rule 23(e) was amended, different Circuit Courts had different lists of factors. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.* (5th Cir. 2012) (The *Reed* factors are "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the

opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).)

Further, in the Fifth Circuit now after the 23(e) evaluation, district courts regularly use the percentage method of calculating a common fund class action settlement with attorney's fees, with a *Johnson* reasonableness check, and for some it is the "preferred method." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012.); *See, e.g., Klein v. O'Neal, Inc.*, Nos. 7:03–CV–102–D, 7:09–CV–94–D, 2010 WL 1435161, at *34 (N.D.Tex. Apr. 9, 2010) (collecting cases); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F.Supp.2d 732, 751 (S.D.Tex.2008); *Turner v. Murphy Oil USA, Inc., 472 F.Supp.2d 830, 860 (E.D.La.2007)* 472 F.Supp.2d at 860 (collecting cases); *Batchelder v. Kerr–McGee Corp.*, 246 F.Supp.2d 525, 531 (N.D.Miss.2003).

The *Johnson* reasonableness check is a framework to evaluate the percentage method of settlement of fees from a common fund, *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717, 720 (5th Cir.1974), *overruled on other grounds, Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

Ultimately, approval of a Rule 23 class settlement involves a two-step process. First, counsel submits the proposed terms of the settlement, and the district court makes a preliminary fairness evaluation. *Smith v. Gurstel Chargo, PA*, No. 8:14CV183, 2014 WL 6453772, *3 (D. Neb. Nov. 17, 2014) ("In considering preliminary approval of a proposed settlement in a class action case, the court makes a preliminary evaluation of the fairness of the settlement, prior to notice."); *see* Manual For Complex Litigation (Fourth) § 21.632 (2004). "To determine whether approval on a preliminary basis is appropriate, a district court considers whether it will 'likely be able to: (1) approve the proposal under Rule 23(e)(2); and (2) certify the class for purposes of judgment on the proposal.'" *Fath v. Am. Honda Motor Co.*, 2019 WL 6799796, at *2 (D. Minn. Dec. 13, 2019) (quoting Rule 23(e)(1)).

If these two elements are satisfied, the Court will review the parties' proposed notice to ensure it satisfies the requirements set out in Rule 23(c)(2)(B) and direct that Rule 23(e) notice be given to the class members advising them of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the proposed settlement. *See id.* (*quoting Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019)); Manual for Complex Litigation (Fourth) § 21.633. The second step in the settlement-approval process takes place after notice has issued, when the Court holds a fairness hearing and determines whether to grant final approval of the parties' proposed classwide settlement. *See* Manual for Complex Litigation (Fourth) §§ 21.633 – 21.635.

Lastly, pure FLSA settlements with no state law claims are not subject to the same two-step process as settlements under Rule 23. Nonetheless, courts have held that settlement of claims in an FLSA collective action generally requires court approval. "Before approving an FLSA

settlement, the Court must ensure that the parties are not negotiating around the FLSA's requirements and that the settlement represents a fair and reasonable resolution of a bona fide dispute." *Thompson v. Spa City Steaks, Inc.*, 2019 WL 5653215 (W.D. Ark. Oct. 31, 2019) (discussing judicial approval of FLSA settlements and factors courts consider) (citing *Younger v. Ctrs. For Youth & Families, Inc.*, 2017 WL 1652561, at *1 (E.D. Ark. Apr. 27, 2017)); *accord Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982). Accordingly, district courts may approve settlements resulting from contested litigation, and the Court should approve the settlement "after scrutinizing the settlement for fairness." *Id.*, 679 F.2d at 1353 (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).

## B.    Certifying the Settlement Class Is Proper.

Before turning to preliminary approval of the Parties' proposed Settlement, the Court must address class certification. A settlement class may be certified if all the requirements of Rule 23(a) are met and one of the requirements of Rule 23(b) is met. Fed. R. Civ. P. 23(a) & (b); Manual for Complex Litigation (Fourth) §21.132. District courts must determine whether class certification is proper, though courts need not assess manageability under Rule 23(b)(3)(D). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial. But other specifications of [Rule 23] … demand undiluted, even heightened, attention in the settlement context."). Here, the Parties jointly seek certification, but Hunt agrees to certification only for settlement purposes

and does not waive any arguments that certification is improper if the settlement is not finally approved.

### 1.      The Rule 23(a) requirements are satisfied.

In order to be certified, the Settlement Class must first meet the requirements of Rule 23(a): numerosity, commonality, typicality, and adequate representation. The Settlement Class here plainly meets these requirements.

Numerosity requires that the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts have accepted that classes of 100 or more members are sufficient to satisfy the numerosity requirement. *See Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999); *TWL Corp. v. Chow* (5th Cir. 2013)). Here, there are over 500 members of the proposed Settlement Class, all of whom worked for Hunt in the identified 21 states. Given the size of this class, joinder is impracticable.

Commonality requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, the claims of the Class "must depend on a common contention .... That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The class proceeding will allow the court to resolve a discrete question of law whose determination "will resolve an issue that is central to the validity of each of the [individual plaintiff's] claims in one stroke." *131 S.Ct. at 2551.* Further, the "claims, defenses, relevant facts, and applicable substantive law" raised by the class claims, ensure that "dissimilarities within the

proposed class" do not have the potential to impede the generation of common answers. *M.D. ex rel. Stukenberg v. Perry, 82 Fed.R.Serv.3d 219, 675 F.3d 832 (5th Cir. 2012*).

Here, there are common questions of law and fact which, if resolved, would be dispositive of issues for each of the Settlement Class Members in one stroke.  The key questions are whether Hunt's policy of payments for unrestricted non-working standby time complied with the FLSA, the AMWA and related state wage laws, and, if not, whether the Settlement Class Members were denied pay for any compensable work time due to the policy.  These questions are common to all the Settlement Class Members.  Hunt of course disputes the nature of the time and payments, and whether they are truly for time worked, waiting to be engaged, or engaged to be waiting under the relevant FLSA caselaw.

Typicality requires that "the claims and defenses of the representative parties are typical of the claims and defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Courts liberally apply the typicality requirement when the representative claims come from the same event or based on the same legal theory as the class members' claims.  *See Stirman v. Exxon Corp., 280 F.3d 554 (5th Cir. 2002)* ("the test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.")

Here, the claims of the Named Plaintiff are typical of the claims of the Settlement Class Members because they arise from the same alleged conduct by Defendant and are all based on the

same legal theories, the alleged violations of the FLSA and the AMWA and related state laws, through the policy of payments for unrestricted non-working standby time complied that Skinner alleges was applied to all Settlement Class Members.

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir.2001). The Court must consider "[1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Id.,* citing *Horton v. Goose Creek Indep. Sch. Dist.,* 690 F.2d 470, 484 (5th Cir.1982) (citations omitted)...

Here, while exact identity of interests is not required, Skinner's interests are aligned with those of the Settlement Class Members (Hunt's policy of payments for unrestricted non-working standby or on-call time applied to all of them). Further, Skinner is an appropriate representative for the Settlement Class and is able to and will fairly and adequately protect the interests of the Settlement Class. Last, the attorney for Skinner, who is proposed as appointed Class Counsel, is experienced and capable in FLSA and AMWA and related state law class and collective action litigation and has successfully prosecuted numerous actions of a similar nature. [*See* Exhibit B, Declaration of Attorney Chris Burks ("Burks Decl.")]

### 2.    Certification of a 23(b)(3) class is appropriate.

In addition to satisfying the requirements of Rule 23(a), the class must meet one of the subsections of Rule 23(b). Here, the proposed Settlement Class satisfies the requirements of Rule

23(b)(3) which requires: (1) questions of law or fact common to the class members "predominate" over questions affecting individual class members; and (2) a showing the class action is a superior method of adjudication for the "fair and efficient adjudication of the controversy." *Stirman v. Exxon Corp.,* 280 F.3d 554 (5th Cir. 2002) The predominance inquiry tests whether proposed class is sufficiently cohesive to warrant adjudication by representation, and the District Court must conduct a rigorous analysis of the requirement.

Here, common issues predominate over individualized issues for the proposed Settlement Class. Skinner alleges that Hunt implemented a payment practice that applied to him and the proposed Settlement Class at the facilities in the 21 states where they worked and that allegedly operated to deny them wages for all time worked. The state laws that Skinner is suing on do not vary insofar as their protection for payments for all hours worked would defeat predominance. Each of the state laws set forth below that Skinner has sued upon have the minimal common and predominate element of requiring a minimum wage and overtime premium payment for all hours worked in a workweek:

    a) the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.* ("AMWA"),

    b) the California Labor Code: Cal. Lab. Code §§ 510 and 1194; Cal. Wage Order No. 4,

    c) Colorado Wage Act, C.R.S. § 8-4- 101, et seq. ("CWA"), Colorado Overtime and Minimum Wage Order No. 37, 7 C.C.R. § 1103-01 ("CMWO"),

    d) Delaware Wage Payment and Collection statute, 19 Del. C. 1101 *et seq.*,

    e) Florida Minimum Wage Act, Florida Statute Chapter 448.08 and .110,

f) Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 et seq. ("GMWL"),

g) Illinois Minimum Wage Law, 820 ILCS105/1, *et seq*. ("IMWL"),

h) Indiana Wage Payment Statute, I.C. 22-2-5.,

i) Massachusetts (Massachusetts Fair Wage Law, M.G.L. c. 151, §§ 1A *et seq*. ("MFWL") and the Massachusetts Wage Act, G.L. c. 149 §§ 148 - 150 ("Wage Act",

j) Nevada Revied Statutes § 608.018,

k) New Mexico Minimum Wage Act ("NMMWA"), N.M. STAT. ANN. § 50-4-22(D),

l) South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq*.,

m) South Dakota Codified Law, SDCL § 60-11-7 and -15,

n) Texas Minimum Wage Act, Texas Labor Code § 62.001 et seq ("TMWA"),

o) Virginia Wage Payment Act (Va. Code § 40.1-29), and

p) Washington Minimum Wage Act RCW 49.46.130, RCW 49.52.050, and RCW 49.52.070

While arguably there are individualized issues relating to the calculation of damages, the "more prevalent or important" issues regarding potential liability (whether Hunt's common payment practice resulted in Skinner and the Settlement Class Members not being paid for all time worked) are both common to the class and plainly do predominate, thus satisfying the Rule 23(b)(3) standard.

In addition to finding that common issues predominate, the Court must also determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As noted above, the fourth of the nonexhaustive factors in Rule 23(b)(3)—manageability—need not be considered when the Court is presented with a settlement class. Here, class treatment under (b)(3) is the superior method of adjudicating the Settlement Class Members' claims because they are on average worth too little to be pursued individually given the cost and time involved in individual actions. [*See* Burks Decl. ¶¶ 15-24.]

So if a settlement class were not certified, it is unlikely that any of the Settlement Class Members would be afforded relief. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

For the same reasons, each Settlement Class Member's interest in separately prosecuting his or her own individual case supports a finding of superiority. It would be uneconomical and inefficient for each Settlement Class Member to pursue his or her claims individually in more than 500 individual lawsuits, each resulting in a relatively small recovery. If, however, any Settlement Class Member does not wish to participate in the Settlement, he or she may opt out of the proposed class and pursue his or her claims individually or not at all. *See* Fed. R. Civ. P. 23(c)(2)(B)(v) (for (b)(3) classes, "notice must clearly and concisely state in plain, easily understood language … that the court will exclude from the class any member who requests exclusion"). For these reasons, the requirements of Rule 23(b)(3) are also met, and the class should be certified though only for settlement purposes.

Since certification under Rule 23(b)(3) is proper, the Court next turns to whether to approve the Parties' proposed Settlement.

**C.     The Proposed Settlement Meets the Requirements for Preliminary Approval.**

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e).  In analyzing whether to approve a class action settlement, courts review the parties' jointly submitted proposal to determine, preliminarily, if it is fair to the persons whose interests the court is required to protect and to provide notice and an opportunity to be heard to those affected by scheduling a fairness hearing.  *See* Manual for Complex Litigation (Fourth) § 13.14.

As amended in 2018, Rule 23(e) now provides a list of factors that district courts must consider when evaluating whether a proposed settlement is "fair, reasonable, and adequate":

(E)     the class representatives and class counsel have adequately represented the class;

(F)     the proposal was negotiated at arm's length;

(G)     the relief provided for the class is adequate taking into account:

(i)  the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)any agreement required to be identified under Rule 23(e)(3); and

(H)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(3)(2).

The 2018 amendment "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) adv. comm. notes.

Here, the proposed settlement meets the above standards for preliminary Court approval. The Parties' dispute involves legitimate disputes of fact concerning the terms and application of Hunt's practice of paying for payments for unrestricted non-working standby time; the Parties exchanged detailed information and data regarding the facts, time entries, and potential damages; and the Parties, through their counsel, engaged in arm's length negotiations as to the terms of the Settlement and Settlement Agreement. More specifically:

(A) Skinner and proposed Class Counsel adequately represented the class in pursuing the claims on their behalf, investigating the facts underlying the claims, analyzing the merits and potential damages, and negotiating a fair resolution.

(B) Proposed Class Counsel and counsel for Hunt negotiated the Settlement and the terms and conditions of the Settlement Agreement at arm's length, through extensive verbal and email communications, and in a mediation with an experienced nationwide FLSA class mediator.

(C) The relief negotiated for the Settlement Class is fair, reasonable, and adequate and fully considers the litigation risks and other factors referenced in Rule 23(e)(2)(C). As noted above, the costs of further litigation would dwarf any potential recovery and would present the risk of no recovery at all. If the Parties had been unable to reach an amicable resolution, the Action would have been heavily litigated between the Parties for over a year or more, and any disposition of the case at the District Court level would likely have gone to the Court of Appeals. Therefore, many years might pass before ultimate resolution.

(D) The Settlement Agreement provides for a reasonable process for providing Settlement Class Members with notice of the settlement (and the opportunity to opt-out or object) and to receive their settlement payments by mail.

(E)     The Settlement Agreement provides for a reasonable attorney's fee and for payment of costs to compensate proposed Class Counsel for the risk, time and effort expended in representing the interests of Skinner and Settlement Class.

(F)     On its face, the Settlement Agreement treats all Settlement Class Members equitably relative to each other in that each Settlement Class Member is credited with the amount of time they spent working under Hunt's policy of payments for unrestricted non-working standby time for the period that each worked for Hunt during the relevant liability period.

Proposed Class Counsel's declaration supports these facts.  (*See* Burks Decl. ¶¶ 15-27.)

On these facts, the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the class.

## D.    The Court Should Approve the Proposed Notice to the Class.

Under Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement] if giving notice is justified by the parties' showing" that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the [settlement] proposal." Fed. R. Civ. P. 23(e)(1).  While Rule 23(e)(1) directs the Court to decide whether there are grounds to give notice of the settlement to the class, Rule 23(c)(2)(B) generally describes the requirements for notice for (b)(3) classes. *Id.* 23(e)(2)(B).  A settlement notice must also comply with due process requirements.   Generally, notice need only be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Indeed, notice must only satisfy the broad 'reasonableness' standards imposed by due process. *See  Eisen v. Carlisle & Jacquelin,* 417 U.S. at 173-77, 94 S.Ct. at 2150-52; *Advisory Committee Note, 39 F.R.D. 98, 105, 107 (1966); Nissan Motor Corp. Antitrust*

*Litigation, In re,* 552 F.2d 1088 (5th Cir. 1977) There is no requirement that the notice "provide a complete source of information" or an exact amount of recovery for each Settlement Class Member. *Id.* (*citing DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995)). So, for example, the Eighth Circuit has found that class notice which "provided a link to the settlement website, a description of the opt out procedure, and a toll free number to pose questions to the claims administrator" was adequate and that the notice was not defective because it did not adequately explain scope of liability releases. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1065 (8th Cir. 2013).

As set forth in detail above and as demonstrated in Exhibit A to the Parties' Settlement Agreement, the Parties' proposed Class Notice, modeled after notices recommended by the Federal Judicial Center, meets the requirements set forth in Fed. R. Civ. P. 23(e)(1) as it is "reasonable." Specifically, the Class Notice:

- Informs the Settlement Class of the claims in this lawsuit;

- Informs the Settlement Class of the Settlement Amount and how the Parties propose the amounts be allocated and distributed;

- Informs the Settlement Class of the consequences for not sending a signed opt-out request and the specific steps the individual must take if he or she wants to be excluded from the class;

- Explains that even if the individual does not exclude him or herself from the Settlement Class, he or she can file an objection, the process and potential consequences for which are described in the notice;

- Explains the consequences for a Settlement Class Member who does not "opt out" of the settlement; and

- Provides contact information for Class Counsel both by phone and email if there are questions relating to the Notice.

Given these undisputed facts, the proposed Class Notice and means of distribution of the Notice meets the standards set forth in Rule 23(e). The Parties therefore ask that the Court approve the notice and its distribution to class members via first-class U.S. mail within 14 days after entry of the Court's order preliminarily approving the settlement or as soon as administratively possible.

Also, within 10 days of filing the Parties' joint motion and memorandum for preliminary approval, class certification, and notice, Hunt will send out notice ("CAFA notice"), as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711 et seq., to the Attorney General of the United States and to the Attorney General for the State of Arkansas, where the Settlement Class Members reside. *See* 28 U.S.C. § 1715(a). Under CAFA, the Court may not enter final approval of the Parties' proposed settlement earlier than 90 days after the last date of service of CAFA notice on a government official. *See 28 U.S.C.* § 1715(d).

**E.    The Court Should Appoint Chris Burks as Class Counsel.**

Under Rule 23(g), district courts that certify a class must appoint Class Counsel. In doing so, courts must consider the following factors: (i) the work counsel has done in identifying or investigating the potential claims in the action; (ii) counsel's experience in handling class actions, other than complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing

the class.  Fed. R. Civ. P. 23(g)(1)(A).  Rule 23(g) also gives courts discretion to consider other pertinent matters and to enter orders necessary for appointment of counsel.  *Id.*

The duty of Class Counsel is to "fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(4). Here, the Declaration of Chris Burks shows that Mr. Burks has considerable experience in representing employees in employment matters, including in class and collective actions under the FLSA and the AMWA.  He devoted significant effort to identifying, investigating, and prosecuting the claims in the Action, he drafted the Complaint and Amended Complaint in the Action, he worked with Hunt's counsel on obtaining information needed to assess the merits and potential damages in the case, and he negotiated the claims of the Settlement Class in this Action.  (Burks Decl. ¶¶ 17-31.)  As such, Mr. Burks has and will vigorously, fairly, and adequately represent the interests of the proposed class as required by Rule 23(g)(1) and (g)(4), and his appointment as Class Counsel is appropriate.

## CONCLUSION

For the reasons discussed above, the Parties respectfully request that the Court grant preliminary approval of the Parties' proposed settlement, certify the proposed settlement class under Rule 23(b)(3), approve the proposed notice to the class, appoint Mr. Burks as class counsel, schedule a fairness hearing and a deadline for objections to be filed.

Respectfully submitted,

**Dalton Skinner, Individually and on Behalf of All Others Similarly Situated, PLAINTIFF**

WH Law | We Help
1 Riverfront Pl. – Suite 745
North Little Rock, AR 72114
(501) 891-6000

By:      */s/ Chris Burks*
Chris Burks (ABN: 2010207)
chris@wh.law

**HUNT MH SHARED SERVICES, LLC AND HUNT MILITARY COMMUNITIES MGMT., INC., DEFENDANTS**

Heather Murray Sager
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
HSager@perkinscoie.com

## CERTIFICATE OF SERVICE

I certify that I have served the forgoing document via email and the CM/ECF system to the following:

Lauren M. Kulpa
Perkins Coie LLP
500 N. Akard Street, Suite 3300
Dallas, TX 75201
lkulpa@perkinscoie.com, dbenitez@perkinscoie.com,
docketdal@perkinscoie.com, kluck@perkinscoie.com

Heather Murray Sager
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
HSager@perkinscoie.com

By:      */s/ Chris Burks*
Chris Burks