IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**DALTON SKINNER, individually and on
behalf of all others similarly situated**     **PLAINTIFF**

V.     CASE NO. SA 5-22-CV-00799-JKP

**HUNT MH SHARED SERVICES, LLC AND
HUNT MILITARY COMMUNITIES MGMT., INC.**     **DEFENDANTS**

## BRIEF IN SUPPORT OF JOINT MOTION
## FOR FINAL APPROVAL OF SETTLEMENT

Plaintiff and Defendant submit this Brief in support of their Joint Motion for Final Approval of their Settlement ("Motion"). The Parties' Motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks an order granting final approval of the Parties' settlement.

**A. Relevant Procedural and Factual History**

On August 24, 2021, the named Plaintiff Dalton Skinner ("Skinner," the "Named Plaintiff," or "Plaintiff") filed this action entitled *Skinner, et al. v. Hunt Military Communities Management, LLC*, Case No. 4:21-CV-746-LPR, in the United States District Court for the Eastern District of Arkansas (the "Action"). [Doc. 1]. In the Action, the Named Plaintiff alleged that Hunt Military Communities Management, LLC. ("Defendant" or "Hunt") violated the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA") by failing to pay him lawful overtime wages for all hours worked. [Doc. 1]. Plaintiff also alleged that Hunt violated applicable state and federal law by failing to properly pay its hourly non-exempt employees nationwide for all hours worked. Specifically, Plaintiff asserted that Defendant's

treatment of on-call/standby hours was improper under the law, resulting in a failure to accurately pay for all hours worked. Plaintiff sought to recover declaratory relief, damages for all unpaid overtime compensation, liquidated damages for such unpaid wages, pre-judgment interest, attorneys' fees and costs, and such other relief as the applicable court deemed proper.

During the course of the Action, the Parties engaged in fact investigation and informal discovery, exchanging information related to the claims and defenses as well as to potential damages and performing calculations of potential damages and anticipated recovery. After agreeing to focus their efforts on early settlement negotiations, the Parties engaged in arm's length negotiations and were able to reach an agreement to mediate, on October 14, 2021, the case was stayed to enable to parties to pursue mediation. [Doc. 5].

On April 11, 2021, the parties completed a mediation with nationally-renowned Texas employment law mediator Bill Lemons, and apprised the Court that Plaintiff and Defendants reached a settlement in principle that would resolve all claims asserted by Plaintiff and the proposed classes. Based upon the investigation of proposed Class Counsel, the informal discovery that occurred, the size of the potential class, and taking into account the contested factual and legal issues involved, the expense and time necessary to prosecute the Action through formal discovery, class-certification proceedings, and trial as well as the risks and costs of further prosecution of the Action, the uncertainties of complex litigation, and the benefits to be received pursuant to this Agreement, Skinner and Class Counsel have concluded that a settlement with Hunt on the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Skinner and the putative class. As such, he and Class Counsel have agreed to settle this Action with Hunt on the terms set forth in the Parties' Settlement Agreement.

Despite entering into the Settlement Agreement, Hunt denies the claims asserted and makes no admission whatsoever of liability under or violation of the FLSA, the AMWA and similar state wage laws, or other applicable law. Also, although Hunt consents to class certification, it does so solely for Settlement purposes and does not waive its right later, should Settlement not be approved, to assert that certification is not proper under Rule 23 or Section 216(b) of the FLSA. Hunt nevertheless desires to settle the Action on the terms set forth in the Settlement Agreement for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation and for the purpose of putting to rest the controversies engendered by the Action.

The Parties have agreed to resolve this matter on a Rule 23 class-wide basis, as well as under the FLSA's collective action procedure. Given the overlap between claims arising under the FLSA and the AMWA and other state law claims, and the fact that the Rule 23 standard is arguably more demanding than the standard for certification of an opt-in collective action under the FLSA (which requires only a showing that members of the collective are "similarly situated"), the parties felt it was practical and prudent to resolve both FLSA and Rule 23 state law claims together via this Settlement. As such, the Settlement includes all current or former hourly-paid employees who worked unrestricted non-working standby time at all Hunt managed locations in the United States at any time between August 24, 2018 and January 13, 2023 (the "Class Period"), who did or could have asserted claims in the Action under the FLSA or similar state laws and who have not otherwise released such claims.

On January 23, 2023, the Court granted the parties' Joint Motion for Preliminary Approval of the Settlement. [Docs. 25-27]. The Order certified the class for settlement

purposes only and appointed Plaintiff's counsel as Class Counsel. [Doc. 27]. The Order further preliminarily approved the settlement agreement subject to a fairness hearing. [Doc. 27]. A fairness hearing was initially set for April 4, 2023 but was initially continued to July 13, 2023. [Docs. 27, 29, 30]. The Court's January 23, 2023 Order also approved the proposed notice procedure which included mailing of the class notice to the last-known addresses of the class members. [Doc. 27]. On July 28, 2023, the parties submitted a letter confirming the settlement and release of claims to be sent to the class to the Court. [Doc. 36] On August 02, 2023, the Court approved the letter confirming the settlement and release of claims and scheduled a final approval hearing for September 19, 2023. [Doc 37].

B.     **Terms of the Settlement**

The Settlement Agreement agreed to by the Parties, and preliminarily approved by the Court, is attached to Plaintiff's Motion as Exhibit A. The Parties now present their settlement for final approval by the Court under Rule 23(e). They and their counsel have undertaken an investigation as to the facts and the claims and defenses in the lawsuit and the disputed issues regarding standby hours. They have also considered the various risks and delays involved in this contested litigation. The proposed Settlement provides for payments to Settlement Class Members who do not opt out of the Settlement in exchange for a release and waiver of specified claims. The Parties believe the proposed Settlement is a reasonable and fair final resolution of their differences.

The Parties stipulated to a Rule 23(b)(3) Settlement Class consisting of those persons who meet the following class definition: All current or former hourly- paid employees who worked unrestricted non-working standby time at all Hunt managed locations in the United

States at any time between August 24, 2018 and January 13, 2023 (the "Class Period,") who did or could have asserted claims in the Action under the FLSA or similar state laws and who have not otherwise released such claims. The Parties' Settlement Agreement contemplates payment of a total settlement amount in a common fund ("Settlement Amount"), which includes attorneys' fees and costs as well as costs of administering the Settlement. The Settlement Amount was calculated based on the Parties' agreement, for settlement purposes, that first taking the pay periods for all Participating Class Members during the Class Period with the amount of hours worked and standby pay, the Settlement Administrator shall then divide the Net Settlement Amount by the total number of pay periods to determine a dollar amount per pay period ("Pay Period Rate"); and the Settlement Administrator shall then take the number of pay periods for each Participating Class Member and multiply it by the Pay Period Rate to calculate their Settlement Share.

In exchange for the settlement payments under the Settlement Agreement, Skinner has agreed to dismiss the Action and all claims with prejudice. Further, in exchange for their respective settlement payments, Skinner and each and every Settlement Class Member, knowingly and voluntarily waives and releases Hunt and the Released Parties (as defined in the Settlement Agreement) from all known and unknown claims for overtime compensation, minimum wages, liquidated damages, penalties and interest, attorney's fees and costs under the FLSA, the AMWA, or any other applicable state laws (including statutory and common law claims for breach of contract, unjust enrichment or other common law claims relating to wage and hour issues) arising from each individual's employment with Defendant up to January 13, 2023. All class members will receive a payment in exchange for their waiver set forth above.

## ARGUMENT AND AUTHORITIES

The Fifth Circuit holds that there is an "overriding public interest in favor of settlement" that it has recognized "[p]articularly in class action suits." *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir.2004) (acknowledging the "strong judicial policy favoring the resolution of disputes through settlement" and affirming both class certification and settlement approval (internal citation and quotation marks omitted)). Where, as here, the Parties propose to resolve class litigation through a class-wide settlement, they must obtain the Court's approval. Fed. R. Civ. P. 23(e). Under Rule 23(e)(2), a court must hold a hearing to consider whether a proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285 (5th Cir. 2017).

Courts have held that settlement of claims in an FLSA collective action also requires court approval. "Generally, FLSA claims can only be compromised after a court reviews and approves the settlement." *Vassallo v. Goodman Networks, Inc.*, 2016 U.S. Dist. LEXIS 142379, 2016 WL 6037847, at *1 (E.D. Tex. 2016) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). In an FLSA class action settlement such as the one at issue here, "the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Lopez v. STS Consulting Servs. LLC*, 2018 U.S. Dist. LEXIS 40977, *3 (E.D. Tex. 2018). Accordingly, district courts may approve settlements resulting from contested litigation, and the Court should approve the settlement after scrutinizing the settlement for fairness. *See Cunningham v. Kitchen Collection, LLC*, 2019 U.S.

Dist. LEXIS 111212, *1 (E.D. Tex. 2019) ("[C]ourts often utilize the Rule 23(e) standard to determine whether a FLSA collective action settlement is fair and reasonable.").

To determine whether proposed class-action settlements are fair, adequate, and reasonable, as amended in 2018, Rule 23(e) now provides a list of factors that district courts must consider when evaluating whether a proposed settlement is "fair, reasonable, and adequate":

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate taking into account:

   i  the costs, risks, and delay of trial and appeal;

   ii the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii the terms of any proposed award of attorney's fees, including timing of payment; and

   iv any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Fed. R. Civ. P. 23(e)(2).*

In the Fifth Circuit now, after the 23(e) evaluation, district courts regularly use the percentage method of calculating a common fund class action settlement with attorney's fees, with a "*Johnson*" reasonableness check, and for some it is the "preferred method." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012.). The *Johnson* reasonableness check is a framework to evaluate the percentage method of settlement of fees from a common fund, *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717, 720 (5th Cir.1974), *overruled on*

*other grounds, Blanchard v. Bergeron,* 489 U.S. 87, 109 S. Ct. 939, 103 L.Ed.2d 67 (1989). The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

### A.  The Proposed Settlement Meets the Requirements for Final Approval.

In analyzing whether to approve a class action settlement, courts review the parties' jointly submitted proposal to determine, preliminarily, if it is fair to the persons whose interests the court is required to protect and to provide notice and an opportunity to be heard to those affected by scheduling a fairness hearing. *See* Manual for Complex Litigation (Fourth) § 13.14.

The Settlement Agreement at issue here satisfies the list of factors district courts must consider when evaluating whether a proposed settlement is "fair, reasonable, and adequate" under Rule 23(e), as amended in 2018. The Settlement has already been preliminarily approved by the Court, meets the above-stated standards and merits final Court approval. The Parties' dispute involves legitimate disputes of fact concerning the terms and application of Hunt's practice of paying for payments for unrestricted non-working standby time; the Parties exchanged detailed information and data regarding the facts, time entries, and potential damages;

and the Parties, through their counsel, engaged in arm's length negotiations as to the terms of the Settlement and Settlement Agreement.  More specifically:

(A)  Skinner and Class Counsel adequately represented the class in pursuing the claims on their behalf, investigating the facts underlying the claims, analyzing the merits and potential damages, and negotiating a fair resolution.

(B)  Class Counsel and counsel for Hunt negotiated the Settlement and the terms and conditions of the Settlement Agreement at arm's length, through extensive verbal and email communications, and in a mediation with an experienced nationwide FLSA class mediator.

(C)  The relief negotiated for the Settlement Class is fair, reasonable, and adequate and fully considers the litigation risks and other factors referenced in Rule 23(e)(2)(C).  As noted above, the costs of further litigation would dwarf any potential recovery and would present the risk of no recovery at all.  If the Parties had been unable to reach an amicable resolution, the Action would have been heavily litigated between the Parties for over a year or more, and any disposition of the case at the District Court level would likely have gone to the Court of Appeals.  Therefore, many years might pass before ultimate resolution.

(D)  The Settlement Agreement provides for a reasonable process for providing Settlement Class Members with notice of the settlement which was approved by the Court (and the opportunity to opt-out or object) and to receive their settlement payments by mail, and said notice was sent.

(E)  The Settlement Agreement provides for a reasonable attorney's fee and for payment of costs to compensate Class Counsel for the risk, time and effort expended in representing the interests of Skinner and Settlement Class.

(F)  On its face, the Settlement Agreement treats all Settlement Class Members equitably relative to each other in that each Settlement Class Member is credited with the amount of time they spent working under Hunt's policy of payments for unrestricted non-working standby time for the period that each worked for Hunt during the relevant liability period.

Class Counsel's declaration supports these facts.  *See* Burks Decl., ¶¶ 15-27, attached to Mot. as Exhibit B).  On these facts, the proposed Settlement is fair, reasonable, and adequate and is in the best interests of the class.

**B.     Lack of Class Member Opposition to the Settlement Favors Final Approval.**

The attitude of class members, as either expressed or by failure to object after notice of the settlement, is a factor to be considered by the court as the overwhelming approval by the Class Members is an important factor in evaluating the fairness, reasonableness, and adequacy of the settlement and supports approval by the Court. *See In re Forterra Secs. Litig.*, 2020 U.S. Dist. LEXIS 146479, *13 ("There have been no objections to Settlement, a fact that weighs in favor of finding the Settlement fair, reasonable and adequate."); *see also Tittle v. Enron Corp. (In re Enron Corp. Sec.)*, 228 F.R.D. 541, 567 (So. Dist. Tx. 2005) ("Receipt of few or no objections "can be viewed as indicative of the adequacy of the settlement." (citing 4 Herbert B. Newberg, *Newberg on Class Actions* Sec. 1141 at 108 (4th Ed. 2002)). *DeBoer*, 64 F.3d at 1178. As the Honorable Jeremy Fogel noted: "[T]he reaction of the class to the proffered settlement… is perhaps the most significant factor to be weighed in considering its adequacy." *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, 3 (N.D. Cal. Jan 20, 2009) (citation omitted); s*ee also Stoetzner v.U.S. SteelCorp.*, 897 F.2d 115,119 (3d Cir. 1990) (fact only 10% of class objected "strongly favors settlement"); *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523,529 (C.D. Cal. 2004) (absence of large number of objections raises a strong presumption settlement is fair to class).

In this case, the Parties believe that the settlement reached in this matter represents a fair and reasonable compromise given the disputed matters at issue and the risks of continuing forward with litigation on the merits and on certification. Members of the Settlement Class appear to agree with Class Counsel's conclusion. Pursuant to the Court's preliminary approval order, a Notice of Proposed Settlement of Class Action (the "Notice") was mailed to 567 potential Class Members. [Doc. 27]; *see also* Notice Forms, attached to Mot. as Exhibits C-D. The

Notice apprised Class Members of their rights, as well as procedures for opting out, objecting to the settlement, or objecting to Class Counsel's application for attorneys' fees and expenses. The time to file objections expired on May 8, 2023. To date, out of 567 class members to whom notice was mailed, only three class members have validly opted out of the settlement and **no** class members have objected to any aspect of the settlement, including any service award to Plaintiff and others providing service to the Settlement Class, or to Class Counsel's request for attorneys' fees **and** costs and expenses. *See* Class Data Sheet, attached to Mot. as Exhibit E. This overwhelming acceptance of the settlement by the Settlement Class fully supports a finding that the settlement and allocation are fair, reasonable, and adequate with respect to the Class and should be approved.

## CONCLUSION

For the reasons discussed above, the Parties respectfully request that the Court grant final approval of the Parties' proposed settlement.

Respectfully submitted,

**Dalton Skinner, Individually and on Behalf of All Others Similarly Situated, PLAINTIFF**

WH Law | We Help
1 Riverfront Pl. – Suite 745
North Little Rock, AR 72114
(501) 891-6000

By:  */s/ Chris Burks*
Chris Burks (ABN: 2010207)

chris@wh.law

**HUNT MH SHARED SERVICES, LLC AND HUNT MILITARY COMMUNITIES MGMT., INC., DEFENDANTS**

Heather Murray Sager
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
HSager@perkinscoie.com

## CERTIFICATE OF SERVICE

I certify that I have served the forgoing document via email and the CM/ECF system to the following:

Lauren M. Kulpa
Perkins Coie LLP
500 N. Akard Street, Suite 3300
Dallas, TX 75201
lkulpa@perkinscoie.com, dbenitez@perkinscoie.com,
docketdal@perkinscoie.com, kluck@perkinscoie.com

Heather Murray Sager
Perkins Coie LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
HSager@perkinscoie.com

                                              By:    */s/ Lindsey Noe*
                                                          Lindsey Noe